SNELL v. THE CITY OF FORT DODGE ET AL.

1. **Taxation**: ASSESSMENT: MANNER OF. Where the assessor employed another to make the valuations of property, which were afterwards submitted to him for correction and approval, the assessment thus made was held not to be invalid.

2. ———: ———: LEVY. An assessment upon the property in question having been made in 1869, and afterwards, during the same year, the town in which the property lay having become incorporated as a city, it was the duty of the auditor to base the levy for 1870 upon the assessment for 1869.

3. ———: EQUALIZATION OF TAXES. The books of assessment will be presumed, in the absence of a showing to the contrary, to be in possession of the board of equalization on the first Monday of May, when it is the duty of the taxpayer to appear if he has reason to complain of the assessment.

4. ———: INTENT TO LEVY: MUNICIPAL CORPORATION. Where a motion to "levy a tax of one per cent upon the taxable property" of a city was carried in its city council, and the clerk duly certified to the auditor that such a levy had been made, it was *held* that the action of the council amounted to a present levy, and that the tax thereunder was a valid one.

*Appeal from Webster Circuit Court.*

WEDNESDAY, April 17.

ACTION in equity to restrain the collection of city taxes on certain real property belonging to the plaintiff, situate within the corporate limits of the defendant, on the grounds, as stated in the petition: 1. That there never was an assessment made by an assessor elected for or appointed by the city, and returned as provided by law, on which to predicate a levy. 2. That the city council never caused the levy to be certified to the board of supervisors as provided by law. 3. That the county auditor on his own motion and without authority of law placed said levy on the tax lists and determined the tax upon said property from the valuation of the township assessor, made in 1869. 4. That no taxes were levied by the council of said city.

The answer denies the material allegations in the petition,

and defendant insists there was a valid assessment and levy and the substantial requirements of law complied with.

There was a reference and a finding that there was no valid assessment, and the taxes illegal and void. This finding was confirmed by the court, a decree accordingly entered and defendants appeal.

*Frank Farrell* and *John Garaghty*, for appellants.

*Theo. Hawley*, for appellee.

SEEVERS, J.—The defendant was duly incorporated as early as the 2d. day of December, 1869, on which day the council held their first meeting. On May 2, 1870, an assessor was appointed by such council, and on the 16th day of said month he duly qualified as such.

Previous to the incorporation the territory embraced in the city limits formed a part of Wahkonsa township, and the said assessor in listing and assessing the property in the city copied from the assessment made in said township for 1869, and in no other way or manner was the value of the property ascertained.

One Smith was the duly elected and qualified assessor for said township in 1869, and all the entries in the assessment book for said year are in the handwriting of Thos. Sergeant. The latter made the assessment, wrote up the book, which was regular on its face, and properly returned and filed. Attached thereto and forming a part thereof was the following return:

"STATE OF IOWA, } ss.
    Webster County. }

"I, James D. Smith, assessor of Wahkonsa township, in said county, do hereby certify that the values of all the real and personal property, moneys and credits, required to be listed for taxation by me, is truly returned and set forth in the annexed list, and that in every case I have diligently and by the best means in my power endeavored to ascertain the true amount and value of all taxable property, moneys and credits,

and as I verily believe the full value thereof, estimated by the rules prescribed by law, is set forth in the list aforesaid; that in no case knowingly have I omitted to assess any property which by law I am required to assess, nor have I connived at any violation or evasion of any of the requirements of the law in relation to the listing or valuation of property, moneys or credits of any kind for taxation.

"Given under my hand the 7th day of June, 1869.

JAMES D. SMITH,
*Assessor of Wahkonsa Township.*"

Sergeant was employed by the assessor and made the valuations of property, but submitted the same to the assessor from time to time for approval.

Under the facts above stated it becomes necessary to determine:

I.   Whether the assessment made in 1869, by the township assessor, was legal and valid.   We are of the opinion it was.

1. TAXATION: assessment: manner of. It is immaterial by whom the clerical duty of listing the property was done, for in no manner could that affect the taxpayer injuriously.   It is true that Sergeant fixed the values of the property in the first instance, but the assessor had a supervision over his work, examined it from time to time, and finally adopted it as his act.   Conceding that the taxpayer is entitled to have the best judgment of the legally elected assessor in determining the value of his property, it by no means appears that he has not had such judgment exercised.   It is not pretended that the judgment of the assessor was in any manner influenced by what was done by Sergeant.   The statute does not undertake to specify in what way or manner the assessor shall determine the value of the property to be assessed; and, in the absence of fraud, or evidence tending to show any prejudice or wrong to the taxpayer, we are unable to say the assessment made was a nullity. If the assessor has exercised his judgment and arrived at a conclusion, we cannot say that the means or measures taken to inform himself upon the subject matter within his jurisdiction were improper and illegal.   Should we do so we

would be usurping the office and performing the duties of assessors.

II.   Having ascertained that the assessment of 1869 was legal and valid and the plaintiff's property duly and legally assessed at that time, it becomes necessary to determine whether another assessment was necessary in 1870, and, if so, whether the one made was legal.

2. ——: ——: levy.

· Under the law as it then existed, and is still in force, there could be no new and independent valuation and assessment of real property made by the assessor in 1870, except as to such as had been omitted in 1869.  If the assessor elected or · appointed in 1870 had undertaken to assess and place a different value on real property from that fixed in 1869 such act would have been without authority of law, and a levy of taxes based thereon, we incline to think, would have been of doubtful propriety, if not void.   As to such property it is a matter of grave doubt whether the assessor had anything to do therewith.   As a matter of convenience he might list it, but he was not required to do even this; but, when the county auditor made out the tax-books for that and all other evenly numbered years, it was his duty to make up the proper list from the books of the previous year, so far as all real property that had been assessed and taxed during that year was concerned, and calculate the taxes thereon, based on the values as fixed and determined by the books in his office.   Rev., Secs. 719, 720; Code, Sec. 812; Chap. 138, Sec. 2, Laws of the Twelfth General Assembly.   Such being true, it was wholly immaterial how, when, or in what manner the assessor of 1870 performed his duties, provided the levy was based on the assessment of 1869, and the amount of taxes ascertained by calculations based on the values fixed by such assessment.

. III.   It is urged that the plaintiff and other taxpayers were deprived of the right to appear before the board of equalization, which at that time was composed of the township trustees, and they were required to meet for the performance of that duty on the first Monday in May.  Chap. 89, Laws of the Thirteenth General Assembly. The argument of the appellee is based on the assumption that

3. ——: equalization of taxes.

as the assessor of 1870 did not qualify until after the first Monday in May the board of equalization could not have had before them the assessment made by him. But as such assessor had no duty to perform as to real property assessed in 1869, and could not under the law assess the same, the assumption is not legally correct. The assessment of 1869, together with all corrections made therein by the board of equalization of that year, if any such there were, in the absence of any showing to the contrary must be presumed to have been in existence and in the custody of the county auditor at the time fixed by law for the meeting of such board in 1870. Such books are public records, open to the inspection of all. There is no showing made whether or not the board met on the appointed day, but the presumption is, and must be under such circumstances, that they performed their duty at the proper time required by law. It must be further presumed, in the absence of any showing to the contrary, that such board had before them the proper books and papers to enable them to perform their duties. Such being the case, the plaintiff was not deprived of the opportunity of having the assessment of his property corrected, and he was not, therefore, deprived of any substantial right.

IV. On the 4th day of April, 1870, " Fessler (a member of the city council) moved to levy a tax of one per cent on the taxable property of the city of Ft. Dodge. Motion prevailed," and on September 26, 1870, the clerk of said council duly certified to the county auditor the fact that such a levy had been made. It is objected that the foregoing does not constitute a present levy, but only an intention to make such a levy at some future day. In this view we do not concur. The intent is clear and apparent and amounts to a present levy. *West v. Whitaker*, 37 Iowa, 598. Conceding it to be true that the clerk of the council certified the fact of such levy to the county auditor without the positive direction of the council, this would not be such an irregularity as will authorize an injunction restraining the collection of the taxes. *Iowa Railroad Land Co. v. Carroll County*, 39 Iowa, 151. Even if it be admitted

4. ——: intent to levy: municipal corporation.

that at the time of the levy no full and complete assessment had been made and returned, this would not be sufficient to warrant us in declaring the taxes void and restraining their collection by an injunction. *Parsons v. Childs*, 36 Iowa, 108. Statutes fixing the time of levying taxes will be deemed directory unless the taxpayer by reason thereof will sustain some substantial injury. *Hill v. Wolfe*, 28 Iowa, 577; *Easton v. Savery*, 44 Id., 654.

For the reasons stated the decree of the Circuit Court will be reversed, and a decree entered in this court, if counsel for appellant so elect, in accordance with this opinion.

REVERSED.