**In the Matter of Appeal of Butler**

IN THE MATTER OF: THE APPEAL OF MR. AND MRS. ALGERNON L. BUTLER, JR., MR. AND MRS. JOHN C. BYRNES, DR. AND MRS. JOSEPH M. JAMES, MR. AND MRS. EMERSON WILLARD, MRS. MARY H. WHITTED, MR. HENRY B. PESCHAU, JR., MR. AND MRS. VAN REID, MS. ELEANOR LeGRAND HERVEY, MR. AND MRS. EDWIN L. WEST, JR., MS. ELIZABETH PARSLEY, MR. AND MRS. HARRIS M. NEWBER, MR. AND MRS. HUGH ALEXANDER McEACHERN, MR. AND MRS. LEMUAL L. DOSS, JR., MR. AND MRS. J. W. WHITTED, MS. ROSEMARY HADEN, MR. AND MRS. HAROLD DOBBINS, MRS. VERA P. BROUSE, MR. ADRIAN HURST, MR. AND MRS. JAMES W. FERGER, DR. JOHN W. ORMAND, JR., ET UX., FROM THE DECISION OF THE NEW HANOVER COUNTY BOARD OF EQUALIZATION AND REVIEW OF JUNE, 1984

No. 8610PTC826

(Filed 3 February 1987)

**1. Constitutional Law § 23.3; Taxation § 25.4— property tax reappraisal—no denial of due process**

Taxpayers were not denied due process where New Hanover County conducted its octennial appraisal of real property as of 1 January 1983; all of appellants' lands were assigned a base value of $20,000 per acre, adjusted by a schedule of values; a Notice of Valuation Change was mailed on 5 April which incorrectly stated that the tax values were increased due to changes or improvements in the real estate and gave the taxpayers seven days to appeal by calling the tax office; those who called were informed that the reappraisal resulted from a computer programming error and that they could contest the reappraisal before the New Hanover County Board of Equalization and Review; appellants appeared before the board on 16 April to object to the reevaluation of their property; the board made no ruling but scheduled further hearings on 21 May and for June; and a second notice was sent on 20 April to clarify a 5 April notice. All of the appellants responded within the seven-day period required by the first notice and were subsequently informed that the county was relying on a clerical error to justify the reappraisal; the second notice clarified the first and continued the hearing so that each taxpayer had approximately 30 days written notice of the general grounds for reappraisal; there is no indication that the taxpayers ever requested additional time in which to conduct discovery or prepare their appeals; and the proceeding before the Property Tax Commission was conducted *de novo* six months after the county board's final decision, enabling the taxpayers to present their entire case again. N.C.G.S. 105-287.

**2. Taxation § 25.9— property tax—clerical error—county's right to reappraise—burden of proof**

The Property Tax Commission did not err by refusing to impose on the county the burden of proving facts necessary to establish its legal authority to conduct a reappraisal where there was a clerical error in the original appraisal. N.C.G.S. 105-287(b).

In the Matter of Appeal of Butler

**3. Taxation § 25.9— property tax—clerical error—reappraisal lawful**

   The evidence was sufficient, reviewed under the whole record test, to sup-
port the Property Tax Commission's conclusion that a reappraisal was lawful
because a clerical error caused an undervaluation. N.C.G.S. 105-287.

APPEAL by taxpayers from the Order of the North Carolina
Property Tax Commission. Order entered 18 February 1986 in
WAKE County. Heard in the Court of Appeals 13 January 1987.

   *Algernon L. Butler, Jr. for taxpayer-appellants.*

   *New Hanover County Attorney's Office, by Robert W. Pope,
Kenneth G. Silliman, and Wanda M. Copley, for New Hanover
County, appellee.*

BECTON, Judge.

   In this action, twenty taxpayers owning real property in the
Masonboro Sound area of New Hanover County challenged the
county's authority to conduct, in 1984, a reappraisal of their prop-
erty which resulted in the assignment of higher tax values than
those previously assigned in the county's 1983 general octennial
appraisal. The taxpayers appeal from a final decision of the North
Carolina Property Tax Commission sitting as the State Board of
Equalization and Review which upheld the reappraisal on the
grounds of a clerical error and manifest injustice in the previous
appraisal. We affirm.

I

   The octennial appraisal of real property was conducted by
New Hanover County (the County) as of 1 January 1983, as re-
quired by N.C. Gen. Stat. Sec. 105-286 (1979). During this
appraisal, all of the lands subject to this appeal (located on Mason-
boro Sound along the Intracoastal Waterway) were assigned a
base value of $20,000 per acre which was adjusted by a schedule
of values formula that varied with the acreage in each tract. In
April 1984 the County tax appraisers revised the values for forty-
six sound-front properties by assigning to each tract a $60,000 per
acre value for "homesite" acreage and a $20,000 per acre adjusted
value for the residual acreage in each tract.

   On 5 April 1984 a computer-generated "Notice of Valuation
Change" was mailed by the County Tax Department to each of

the 46 affected property owners. The notices incorrectly stated that the tax values were increased "[d]ue to changes or improvements to [the taxpayer's] real estate during 1983," and instructed that notice of appeal be given by calling the tax office within seven days. Those taxpayers who responded within the seven-day period were informed that the reappraisal resulted from correction of a computer programming error which had caused an incorrect appraisal and that they could contest the reappraisal before the New Hanover County Board of Equalization and Review (the Board) on 16 April 1984.

Twenty of the affected taxpayers (the appellants herein) appeared before the Board on 16 April 1984 to object to the off-year revaluation of their property. The Board made no ruling on that date but scheduled further meetings for 21 May 1984 and 4 June 1984. The Board also directed the Tax Department to send a second notice to clarify the misleading 5 April notice.

On 20 April 1984 the Tax Administration mailed to each of the 46 affected property owners a second notice which stated, in part:

> . . . this notice serves to clarify your recent appraisal notice and your right to be heard. Notice resulted from our correction of improper appraisals as authorized by North Carolina General Statute 105-287.

The notice further informed the recipients of their right to appeal to the Board and of the 21 May and 4 June meeting dates. The twenty taxpayers (appellants) responded to the second notice and were heard at the 4 June meeting, after which the Board upheld the reappraisal.

The taxpayers then appealed to the North Carolina Property Tax Commission (the Commission) contending that: (1) the County lacked statutory authority to reappraise their property in a non-appraisal year, (2) the notification procedure utilized by the County violated due process, and (3) even if the reappraisal was authorized, the individual appraisals were not conducted in accordance with the provisions of N.C. Gen. Stat. Sec. 105-317. At the hearing before the Commission on 18 December 1984, the issues were limited, by stipulation of the parties, to whether the County lawfully reappraised the taxpayers' property in a non-

appraisal year due to a "clerical error" or "manifest injustice" in the prior appraisal within the meaning of N.C. Gen. Stat. Secs. 105-287(b)(5) and (9). The taxpayers expressly preserved their appeals on the valuation of their individual properties.

Prior to the hearing of evidence and after argument from counsel, the Commission ruled that the taxpayers should bear the burden of proof on the issues before it. The primary evidence was testimony of the County's Appraisal Supervisor, Mr. Bethune, which tended to show that the primary raw data for the 1983 appraisal consisted of actual sales data and acreage factors marked on a "land pricing map" used by the appraisers; that County appraisers had been generally instructed to split out a one-acre homesite for each tract and assign to it a greater value than that assigned to the residual acreage; that the appraisers were not bound by those instructions, however; that the land pricing map reflected this dual valuation for some properties in the Masonboro Sound area but not for others; that the map indicated an intent to assign a uniform base value of $60,000 per acre to the lands subject to this appeal with no "split-out" for homesite acreage; and that an error in coding the information from the map into the County's computer resulted in the assignment of a $20,000 per acre value instead. Mr. Bethune further testified that, had he personally conducted the appraisal he would have assigned a value of $60,000 per acre for a homesite and $20,000 for the residual acreage as was done in the reappraisal. Regarding the issue of "manifest injustice," Mr. Bethune testified that the erroneous valuation at $20,000 per acre resulted in a "gross undervaluation."

Taxpayer Algernon Butler testified that he was told by the tax office that the County's error consisted of its failure to split out a homesite in these particular tracts. The taxpayers also offered testimony of Mr. Butler regarding the uniqueness of the sound-front properties as well as a summary of known sales in the area by which they sought to show that the 1983 valuation was fair and thus not manifestly unjust. In an order entered 18 February 1986, the Commission upheld the County's off-year reappraisal, concluding as a matter of law that a clerical error was committed during the 1983 appraisal resulting in improper figures which were manifestly unjust at the time of the appraisal within the meaning of G.S. 105-287(b)(5) and (9).

On appeal to this Court, the taxpayers now renew their due process argument and contend further that the Commission erred in placing the burden of proof on the taxpayers and in making findings of fact and conclusions of law not supported by the evidence.

## II

N.C. Gen. Stat. Sec. 105-345.2 (1985) is the controlling judicial review statute for appeals from the Property Tax Commission. *In re McElwee*, 304 N.C. 68, 74, 283 S.E. 2d 115, 120 (1981). Subsection (b) of that statute provides in part:

> The court may . . . reverse or modify the decision [of the Commission] if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

> (1) In violation of constitutional provisions; or

> (2) In excess of statutory authority or jurisdiction of the Commission; or

> (3) Made upon unlawful proceedings; or

> (4) Affected by other errors of law; or

> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

> (6) Arbitrary or capricious.

G.S. Sec. 105-345.2(c) provides that the court shall review the whole record and take due account of the rule of prejudicial error.

## III

[1]   We first consider whether the notice of reappraisal was sufficient to satisfy due process. Although the Commission failed to expressly state, as it should have, in its findings or conclusions, that the taypayers were afforded due process, that determination is inherent in its conclusion of law that the reappraisal was lawful. Thus, the issue is whether that conclusion is in violation of constitutional provisions or made upon lawful proceedings pursuant to G.S. Sec. 105-345.2(b)(1) and (3). *See In re McElwee*, 304 N.C. at 81, 283 S.E. 2d at 124. The taxpayers argue that the initial

computer-generated notice was misleading and allowed an inadequate time in which to respond, and that the second notice did not sufficiently clarify or particularize the reasons for the reappraisal.

N.C. Gen. Stat. Sec. 105-287 does not specify the type or timing of notice to be given to a taxpayer whose property is reappraised pursuant to its provisions. Due process merely requires that notice, considering the time, the general wording, and the method of publication be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *See In re McElwee* at 81, 283 S.E. 2d at 123 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L.Ed. 2d 865, 873 (1950)).

In our view, the taxpayers have been afforded ample opportunity to voice their objections to the reappraisal. Any inadequacy of the initial 5 April notice has not prejudiced the taxpayers and, in any event, was cured by the second notice. All of the appellants responded within the abbreviated 7-day period required by the first notice and have been informed since that time that the County was relying on a clerical error to justify the reappraisal. Furthermore, the second notice, mailed on 20 April 1984, clarified the earlier notice and continued the hearings to 21 May and 4 June, so that each taxpayer had approximately 30 days written notice of the general grounds for reappraisal prior to further hearings. The record contains no indication that the taxpayers ever requested additional time in which to conduct discovery or prepare their appeal.

Moreover, the proceeding before the Property Tax Commission was conducted *de novo* some six months after the County Board's final decision, enabling the taxpayers to present their entire case again. Unquestionably the taxpayers, by that time, knew and were prepared to contest the precise grounds asserted by the County for the off-year revaluation. Under these circumstances we conclude that the taxpayers were not denied due process merely because the 20 April notice failed to state the grounds for the reappraisal with greater particularity.

IV

[2] We next address the taxpayer's contention that the Commission erred in refusing to impose upon the County the burden of

proving facts necessary to establish its legal authority to conduct the reappraisal, *i.e.*, that the properties were "last appraised at an improper figure as the result of a clerical error," G.S. Sec. 105-287(b)(5) and were "last appraised at a figure that . . . was manifestly unjust at the time so appraised," G.S. Sec. 105-287(b)(9).

N.C. Gen. Stat. Sec. 105-287(b) provides that: "All real property that meets the following requirements *shall* be reappraised in years in which no general appraisal or reappraisal is being conducted in the county. . . ." (Emphasis added.) Like the octennial appraisal statute, G.S. Sec. 105-286, this statute thus imposes upon the County an affirmative duty to reappraise property in a non-appraisal year whenever it determines that any of the enumerated circumstances exists. We ascertain no legislative intent that a county be required to bear a particular burden of establishing its authority to reappraise in off years. To the contrary, our Supreme Court has stated that:

> "All presumptions are in favor of the correctness of tax assessments. The good faith of tax assessors and the validity of their actions are presumed." [Citation omitted.] As a result of this presumption, when such assessments are attacked or challenged, the burden of proof is on the taxpayer to show that the assessment was erroneous. [Citation omitted.]

*In re Amp, Inc.*, 287 N.C. 547, 562, 215 S.E. 2d 752, 761-62 (1975). *See also In re McElwee* at 75, 283 S.E. 2d at 120.

Ordinarily taxpayer appeals involve challenges to the actual valuation of property. *See, e.g., In re Amp.* This is apparently a case of first impression in that the taxpayers are challenging instead the County's right to reappraise, evidently in hopes of avoiding twenty separate hearings on the actual values assigned. The taxpayers have admitted that they would bear the burden of proof if they were contesting the tax values assigned pursuant to a lawful appraisal. In our opinion, the taxpayers also bear the burden of proof when a reappraisal has been conducted because of a clerical error in the original appraisal, and the taxpayers may not shift the burden of proof to the County merely by appealing on different grounds. Accordingly, we hold that the Commission's refusal to impose the burden of proof on the County was not a reversible error of law.

V

[3] Finally, the taxpayers maintain the Commission's conclusions of law regarding the lawfulness of the off-year reappraisal are based upon erroneous findings of fact. In its findings of fact, the Commission determined that the County's intention in the original 1983 octennial appraisal was to split out a homesite in each of the tracts which were revalued in 1984 and to assign two values: $60,000 per acre for homesite acreage and $20,000 per acre for the residual acreage. Based on our review, using the "whole record" test, we conclude that the evidence does not support these findings. Instead, our review shows that the original intent of the appraisers was not to split out a homesite from the lands in question but rather to value the tracts at a flat $60,000 per acre adjusted according to the size of each tract. However, the "whole record" test allows us to uphold the final decision of the Commission if its conclusions of law are supported by the evidence, despite an immaterial error in its findings of fact. Here, the precise original intent of the appraisers is not the critical, determinative question. The relevant inquiry is whether that intent failed to be implemented due to a clerical error, resulting in an improper valuation. Applying the "whole record" test, we conclude that the land pricing maps and other exhibits, and the expert testimony of the Appraisal Supervisor provide "competent, material, and substantial evidence" in support of the Commission's conclusion that the reappraisal was lawful because a clerical error caused an undervaluation.

Only one of the nine grounds for reappraisal enumerated in G.S. Sec. 105-287 need exist in order for a county to lawfully conduct a reappraisal in a non-appraisal year. Having determined that the evidence supported the existence of a clerical error, we thus need not review the Commission's conclusion that the reappraisal was also lawful based on "manifest injustice" in the 1983 valuation.

VI

For the foregoing reasons, the decision of the North Carolina Property Tax Commission is

---

Affirmed.

Judges JOHNSON and PHILLIPS concur.